## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTIN PANTZAR,** | : | |
| **5452 Main Road** | : | |
| **Sweet Valley, PA 18656,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **COUNTY OF LEHIGH,** | : | |
| **17 S. 7th Street** | : | |
| **Allentown, PA 18101,** | : | |
| | : | |
| **WARDEN KYLE A. RUSSELL,** | : | |
| **38 N. Fourth Street** | : | |
| **Allentown, PA 18102,** | : | **Jury Trial Demanded** |
| | : | |
| **DIRECTOR OF CORRECTIONS** | : | |
| **JANINE DONATE,** | : | |
| **38 N. Fourth Street** | : | |
| **Allentown, PA 18102,** | : | |
| | : | |
| **UNIDENTIFIED AGENTS AND** | : | |
| **EMPLOYEES OF THE COUNTY OF** | : | |
| **LEHIGH, JOHN AND JANE DOES I-X,** | : | |
| **17 S. 7th Street** | : | |
| **Allentown, PA 18101,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **UNIDENTIFIED EMPLOYEES, AGENTS** | : | |
| **AND CORRECTION OFFICERS OF** | : | |
| **THE LEHIGH COUNTY JAIL,** | : | |
| **JOHN AND JANE DOES XI-XX,** | : | |
| **38 N. Fourth Street** | : | |
| **Allentown, PA 18102,** | : | |
| | : | |
| **Defendants.** | : | |

1

## COMPLAINT

NOW COMES, the Plaintiff, KRISTIN PANTZAR, by and through her legal counsel, Robert E. Goldman, Esquire, and does hereby allege and aver the following:

## I.   JURISDICTION AND VENUE

1.   This action is instituted under the United States Constitution, particularly under the provisions of the Fourteenth Amendment, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act," as amended, 42 U.S.C. §§ 1983, and 1988.

2.   This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, § 1343(a)(3), § 1343(a)(4) and § 1367(a), regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.   Venue in the Eastern District is properly laid pursuant to 28 U.S.C. § 1391, insofar as the alleged actionable conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of Allentown, Lehigh County, Pennsylvania, in particular.

## II.   PARTIES

4.   Plaintiff Kristin Pantzar ("Plaintiff") is an adult individual who currently resides at 5452 Main Road, Sweet Valley, Pennsylvania 18656.  She was

at all relevant times, a citizen of the Commonwealth of Pennsylvania and at all times pertinent hereto was a pre-hearing detainee incarcerated in the Lehigh County Jail.

5.     Defendant County of Lehigh, was and still is, a domestic governmental entity duly organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a principal place of business located at the above-captioned address.  Hereinafter, the County of Lehigh shall be referred to as the "County." And, at all times relevant hereto, the "County," with guidance from its Warden and Director of Corrections, operated the Lehigh County Jail located at 38 N. Fourth Street, Allentown, Pennsylvania 18102.  Hereinafter the Lehigh County Jail shall be referred to as the "Jail" or "LCJ."  The Defendant County of Lehigh operated the Lehigh County Jail, which is a direct supervision facility which, until 2014, was formerly known as the Lehigh County Prison.  It is located at 38 North Fourth Street, Allentown, PA 18102 and at all times pertinent, was a correctional institution responsible for the health, safety and welfare of the Plaintiff who was legally incarcerated within its institutional facility.  The Lehigh County Department of Corrections operates the Lehigh County Jail and functions as a County Department, with a Director appointed by the County Executive, and confirmed by the Board of Commissioners.

3

6.    Defendant Kyle A. Russell is an adult individual and is the Warden of the Lehigh County Jail and has served in that capacity since his appointment by the Lehigh County Board of Commissioners on December 12, 2018, with a hire date of January 3, 2019 and a classification as a Warden 2 and, in that capacity acts as both a supervisor and policy-maker with regard to regulating and overseeing the operations of the Prison and that of its institutional medical provider, PrimeCare Medical, Inc.  His business office is also located at the above-captioned LCJ address.  He is being sued herein in his individual capacity, in as much as the County of Lehigh is already a named Defendant and naming him also in his official capacity would be redundant.  As a supervisor, decision and policy-maker for the Lehigh County Jail, his conduct constitutes the official policy or custom of the County of Lehigh, rendering the County liable for the actions, or failures to act, committed by him, or his supervisors and subordinates, as more specifically complained of herein.  Hereinafter, Russell shall be referred to as "Warden" or "Russell."  The punitive damages being sought in the within action are sought against the individual Defendants, Russell included, but only in their individual capacities, even though their actions were clearly committed under color of law and are also attributable to the County of Lehigh.

4

7.   Defendant Janine Donate is the Director of Corrections and performs all roles, functions and responsibilities typically associated with a traditional Pennsylvania County Prison Board and, she is responsible for the overall administration of the County Jail and must ensure that its operation comports with state and federal constitutional standards and regulations, current case law, as well as ensure that all personnel act in accordance with established policy and procedure, and provides a critical linkage between the Department of Corrections, other branches of County government, as well as other law enforcement agencies and the community.  Consequently, she acts as both a decision-maker and supervisor for Lehigh County, the Lehigh County Jail and the Lehigh County Department of Corrections.

8.   Defendants Unidentified Agents and Employees of the County of Lehigh, are adult individuals who cannot be identified at this time, but are persons whose identities are believed to be ascertainable hereafter during the discovery process provided under the Federal Rules of Civil Procedure. They are collectively labeled here as John and Jane Does I-X and may be referred to hereinafter as the "County Actors" and shall be included in each and every reference made to the "County," hereinafter.  Their place of business is the above-captioned address for the County of Lehigh and, they may also serve in a dual capacity as PrimeCare agents or employees.  They

may also be considered "Employees, Agents and Correctional Officers of the Lehigh County Jail."

9.  Defendants Unidentified Employees, Agents, and Correction Officers of the Lehigh County Jail, are adult individuals who cannot be identified at this time, but are persons whose identities are believed to be ascertainable hereafter during the discovery process provided under the Federal Rules of Civil Procedure.  They are collectively labeled here as John and Jane Does and may be referred to hereinafter as the "County Actors."  Their place of business is the above-captioned address for the Lehigh County Jail, and they may also serve a dual capacity as PrimeCare agents or employees and "Agents and Employees of the County of Lehigh".

10.  The punitive damages sought hereinafter, are sought only against the individually named, and to be named, Defendants in their individual capacities, even though each may be sued in their official capacities as well as their individual capacities.

## III.   PRE-DISCOVERY FACTUAL ALLEGATIONS

11.  On May 1, 2022, a 23 year old female, "CP", was arrested by the City of Bethlehem Police Department ("BPD") and charged with the following offenses: felony aggravated assault on a police officer, the disarming of a police officer; terroristic threats; simple assault on a police officer, and

harassment.  In a sworn affidavit to the criminal complaint filed by BPD, a BPD Officer set forth the following facts that occurred on May 1, 2022:

a) Two BPD officers responded to a call regarding a "female experiencing a mental health crisis";

b) Upon their arrival they spoke with two civilian victims of an assault by CP;

c) CP gabbed one civilian witness from behind and started hitting her multiple times and ripped her clothes;

d) CP then struck the second civilian witness on the arm;

e) When approached by the two BPD Officers, CP stated that she "felt like killing people today";

f) One Officer attempted to diffuse the situation but CP responded that she was going to take his firearm and shoot him.  CP then reached for the officer's weapon;

g) During a struggle with CP while taking her into custody, CP struck and caused abrasions to the police officer;

h) While in custody, CP attempted to bite the police officer and kicked him in his left leg;

i) When another officer went to assist his fellow officer, CP attempted to bite him also and kicked him in his right leg;

j)  CP spit at EMS personnel when they arrived; and

k)  The Officers then observed that CP had violently damaged a group home where she resided, causing structural damage to the interior wall of the residence; tore down window blinds, damaged a television and lamp, and threw a coffee table into the wall.

12.  CP was incarcerated on the foregoing charges at the Northampton County Prison.

13.  As part of their policy, procedures and practices, Northampton County Prison was fully aware of the nature of CP's charged offenses and her mental health issues and violent propensities.

14.  In addition to being the healthcare provider at the Lehigh County Jail, PrimeCare also served as the healthcare provider for inmates at NCP and was aware of CP's mental health issues, her violent propensities, and her medication needs, and was required to document that information, as well as information concerning their administration of necessary drugs to CP, while she was in NCP custody.

15.  When inmates, such as CP, are transferred from NCP to LCJ, information concerning the inmate, including the nature of pending charges and the dangerous propensities of the inmate, the inmate's mental health status, and other pertinent information is made available to the receiving prison

facility (i.e. LCJ) (as well as PrimeCare).  This is also required under Regulations prescribed in Pennsylvania's Administrative Code, and well-established national correctional standards and safeguards, including those adopted by the American Correctional Association, which require this information to be determined and documented upon an inmate's admission into any County Correctional Facility.

16.   Lehigh County and LCJ employees, and the Warden and Director of Corrections had both actual and constructive knowledge of the dangerous propensities of CP and the need to keep her segregated from other inmates such as the Plaintiff.

17.   PrimeCare, Lehigh County's in-house, subordinate, contractual healthcare provider, was also aware of the mental health issues of CP and of her continued need to be administered drugs in an uninterrupted fashion in an attempt to moderate or eliminate her violent propensities, the danger she presented to others and the consequences which this has for CP's classification and housing.

18.   In fact, PrimeCare provided medical services to inmates at both Northampton County Prison and the Lehigh County Jail and, interchangeably employed personnel at both correctional institutions who were obligated to share that critical information with the Defendants.

19.   PrimeCare medical records for an inmate at NCP are available to PrimeCare personnel at LCJ when a transfer occurs and must be reviewed.

20.   Despite the obvious need, and the state administrative regulations which require that someone like CP not be housed in general population, but be immediately segregated, approximately three days after her transfer to LCJ, the Defendants employed by the Lehigh County and LCJ and their subordinates, placed or caused or permitted CP to be placed into the same locked cell as that occupied by the unsuspecting Plaintiff.

21.   Plaintiff was never advised or otherwise warned of CP's mental health issues and/or violent propensities, including by Lehigh County, LCJ or its agent PrimeCare, or any of their employees.

22.   Prior to CP's placement in the cell containing the Plaintiff, and even after she was placed in the Plaintiff's cell, CP repeatedly made increasingly agitated requests and demands, to both Jail and health care individuals, to receive her prescribed medications which were inexplicably kept from her.

23.   Despite CP's obvious increased anxiety, distress, agitation and evolving aggressive behavior, the necessary medications were not provided to CP.

24.   The following day, on or about June 10, 2022, while the Plaintiff was asleep in her bed, she was suddenly and for no reason viciously assaulted by CP, who put a blanket over the Plaintiff's head, stating that she wanted

"to kill somebody," and thereafter started to smash Plaintiff's head repeatedly into the cinder block wall of their cell, while otherwise also beating her about her person and scratching, and biting her. CP also tried to pull the Plaintiff off of her top bunk onto the cement floor below.

25. The Plaintiff was beaten so badly that the cell was a bloody mess and she is believed to have lost consciousness for an unknown period of time.

26. Despite Plaintiff's screams for help and cries of pain, there was no correctional officer in the vicinity when she was so brutally beaten by CP.

27. When correctional officers finally arrived after an inexcusably long delay, CP then also started to assault the officers.

28. Within the first ten minutes after the assault on the Plaintiff, the seriously battered and injured Plaintiff started losing sight in her right eye.

29. As a direct and proximate result of the Defendants, acting alone or in concert, with such deliberate indifference to the health, safety and welfare, of the Plaintiff as indicated above, and as may be detailed further hereinafter, the Plaintiff was caused to suffer, *inter alia*, the following harms, and asserts the following damages, some or all of which may be continuing and/or permanent in nature:

    i. physical and mental pain and suffering, including discomfort, loss of use of bodily function, loss of vision, ill health, loss of sleep, and

other emotional injuries including PTSD, stigma, humiliation, distress and emotional trauma;

ii.   medical expenses for multiple surgeries and other medical interventions;

iii.   loss of life's pleasures;

iv.   loss of income and shortening of her economic horizons;

v.   general damages arising from the violation of Plaintiff's Constitutional rights under the Fourteenth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution;

vi.   punitive damages (except as to the County of Lehigh and the Defendants in their official capacities), which are justified factually as alleged herein, and legally, because the Defendants acted maliciously and/or wantonly in violating the Plaintiff's Constitutionally (federal and state) protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society;

vii.   those harms, losses and damages additionally detailed hereinafter; and

viii.   such legal fees and costs as may be recoverable under the law.

30.   At all times during the events described above, the Defendants were engaged in a joint venture.  These individual Defendants assisted each other in performing the various actions described, and lent their physical presence, support, intimidation and/or the authority of their position to each other during the said events.

31.   The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff and, it would be unreasonable for any Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

32.   Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, Plaintiff in particular, as well as others, are likely to suffer damages from repeated similar Constitutional violations in the future, requiring injunctive relief.

33.   The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

34.   While acting under color of law, the Defendants deprived the Plaintiff of various state and federal Constitutional rights as more fully set forth herein.

35.   Further, the conduct exhibited by subordinate Defendants, which resulted in the assault of CP upon the Plaintiff, was not unexpected.  Neither were

their actions the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, and their deficient or deficiently enforced, training, policies, supervision, practices and customs, which operated as the moving force behind what the Defendants believed to be their unaccountable efforts to engage in what had become, all too likely, Constitutional deprivations.

36.     The likelihood is that, but for the alleged acts and omissions committed by the policymaking/supervising Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

37.     The County of Lehigh is liable for the acts or omissions of its Defendant policy/decision makers and supervisors, Warden Russell and Director of Corrections Janine Donate, where they have failed to act, and the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of Constitutional rights, that the aforesaid policymakers and/or supervisors can be said to have been deliberately indifferent to the need.

38.     The conduct of the Defendants was deliberate, intentional, willful, wanton and calculated to allow, or done with the reckless disregard for the

inflicton of, pain and other harms upon the Plaintiff, entitling the Plaintiff to receive punitive damages in addition to compensatory damages, costs and attorneys' fees as permitted under law.

**<u>COUNT I</u>**
**42 U.S.C. §1983**
**Fourteenth Amendment Due Process Violation – Duty To Protect/**
***Monell* Liability**
***Against All Defendants***

39.   The Plaintiff incorporates by reference the preceding paragraphs as if once again set forth here.

40.   At all times pertinent, the Plaintiff was a pre-trial detainee entitled to protection from prisoner-on-prisoner violence under the Fourteenth Amendment, which provides her with the same, if not more protection than the Eighth Amendment does for imprisoned convicts.

41.   It is well established that the Plaintiff, as a pre-hearing detainee, "ha[s] a clearly established constitutional right to have prison officials protect [her] from inmate violence."

42.   The Defendants, have a duty, and must take reasonable measures to guarantee the safety of inmates in their custody, including the duty "to protect prisoners from violence at the hands of other prisoners" because "[b]eing violently assaulted in prion is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"

15

43.    Here, the Defendants failed to protect the Plaintiff against a known risk of substantial harm by CP, an obviously mentally disturbed prisoner and a knowingly violent individual who, in accordance with well-established correctional requirements, the Pennsylvania Administrative Code standards governing County Correctional Institutions such as the Lehigh County Jail, and national standards including those of the American Correctional Association, should have been immediately identified and classified as a dangerous and unstable inmate with the potential to cause serious harm to herself or others, including, most specifically, fellow inmates; who should have been segregated and not placed in general population, much less in an-escape-proof locked jail cell with a defenseless Plaintiff, who was not warned of CP's dangerous propensities and past unpredictable and dangerous behaviors.

44.    CP's vicious assault upon the Plaintiff was foreseeable, if not predictable and, was made even more inevitable by the Defendants' failure to see to it that its contractual private healthcare provider, PrimeCare Medical, Inc., was regularly dispensing CP her necessary medications, in an attempt to modify or preclude her known vicious and abhorrent behaviors and episodes.

45.   The law is well-settled that the government has an affirmative "obligation to provide medical care for those whom it is punishing by incarceration" and that an inmate has a right to "rely upon authorities to treat his medical needs." By the Defendants failure to see to it that those needs of CP were met, either by their employees and subordinates, or by PrimeCare employees (with whom it contracted to attend to those needs, but could not delegate the legal and Constitutional obligations to see to it that those needs were met), the Defendants seriously increased the risk and harm that CP would act out in a dangerous fashion with her locked in "cellee", the Plaintiff, who was her most obvious and foreseeable, if not predictable target.

46.   In this regard, the due process rights of prehearing detainees, like the Plaintiff, are at least as great as the Eight Amendment protections available to a convicted prisoner serving his or her sentence.

47.   The "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' … proscribed by the Eighth Amendment." *Id.* And, the deliberate indifference to CP's serious medical needs increased the risk of CP harming the Plaintiff and, in fact, was a subordinate factor in bringing about that harm.

48.   The County of Lehigh knows that, on virtually a daily basis, those persons which it employs at the Lehigh County Jail will confront inmate assessment, classification and handing decisions on a regular, if not daily basis, and that such situations often involve difficult decisions requiring multiple inquiries, from multiple sources, careful supervision and proper monitoring, as well as the verification of multiple redundancies to safeguard against the potential for physical and constitutional prisoner-on-prisoner harms, just as occurred here.  And, they are certainly aware that if a prisoner who is dangerous or otherwise mentally compromised has not been properly and fully evaluated, classified, monitored, segregated and where necessary, medicated, harm to other persons and staff is unreasonably and unnecessarily increased.

49.   It was Warden Russell's and Director of Corrections Janine Donate's joint obligations as both decision/policymakers and supervisors to see to it that prisoners who are remanded to the custody of the Lehigh County Jail, and who are without the ordinary means of avoiding harm by virtue of their complete and sole dependence of the Defendants for protection, are actually protected from harm – especially foreseeable prisoner-on-prisoner harm.  In fact, it is arguably their most fundamental obligation to see to it not only that prisoners entrusted to their custody remain separated from

society for the protection of those beyond the walls of the Jail, but when appropriate, also to separate and protect detainees, like the Plaintiff, who have no real means to escape from another dangerous prisoner's assault in their custody from potentially dangerous prisoners.

50. The County of Lehigh, its Warden, Kyle A. Russell, and its Director of Corrections, Janine Donate, each act in capacities as both decision/policymakers and supervisors to the subordinates who: participated in the misclassification of CP; failed to see to it that CP was segregated from the Plaintiff and other inmates; failed to see to it that the information regarding CP's dangerous propensities was promptly determined at the time of her admission to the facility, and thereafter properly disseminated to all Jail staff, including the contracted – for health care providers; failed to see to it that CP was properly medicated and that her calls for medication were properly responded to; failed to see to it that the Plaintiff was not made to live in a locked cell with CP, providing CP the opportunity she otherwise would not have been afforded, to assault and seriously harm the Plaintiff at CP's whim; failed to warn the Plaintiff of CP's vicious tendencies so that she could, at the least, be more vigilant and be more prepared to protect herself; failed to see to it that the actions of CP were more closely and more frequently monitored by Jail personnel and

cameras; failed to see to it that their subordinates were reasonably positioned in a prepared and forewarned position, to enable them to be immediately responsive to any dangerous conduct by CP rather than, as here, located in a place dictating an untimely response, which permitted further unnecessary harm to the Plaintiff; and, failed to see to it that their personnel were properly trained, supervised and performance tested, with proper written guidelines in place, directing how to best avoid, and how to properly response, to this emergency, i.e. the Plaintiff's locked-in-cell victimization by CP.

51.   The Defendants were obligated to act in accordance with Pennsylvania regulations controlling the operation of their Correctional limitations.

52.   The Commonwealth of Pennsylvania's administrative requirements for separating inmates who suffer some form of mental illness was violated by the Defendants who allowed CP to stay in general population with the Plaintiff. 37 Pa. Code § 95.226(2).

53.   The Defendants failed to promulgate an appropriate written local policy, as required by the Commonwealth of Pennsylvania's administrative requirements, specifying the process for the segregation, removal or transfer of inmates like the Plaintiff who clearly required medical attention. 37 Pa. Code § 95.226.

54.    The Defendants failed to promulgate an appropriate written local policy for classification based on the degree of security risk and need for supervision of a prisoner like CP, as required by the Commonwealth of Pennsylvania administrative requirements, in an appropriate written local policy. 37 Pa. Code § 95.225.  And, in the event it is disclosed that such policies in fact existed, the Defendants failed to properly inform and train their Corrections Officers regarding same and, also failed to supervise, and enforce said policies including by conducting appropriate objective investigations and imposing discipline (including remedial training) and making policy modifications, where warranted.

55.    It is further believed and therefore averred that none of the above requirements were met with regard to previous and post inmate-on-inmate assaults, and in particular, they were not met with regard to this assault upon the Plaintiff, further evidencing the Defendants' policy of deliberate indifference to the health, safety and welfare of inmates like the Plaintiff, who are solely and wholly dependent upon the Defendants for her health, safety and security, and who are forced to surrender their freedom and self-protection, and the protection of law enforcement and others, for an environment where their safety and security is at the mercy of the Defendants for providing a reasonable safe environment.

56.   Under the above-referenced Pennsylvania Administrative Code regulations, the Lehigh County Jail was required, *inter alia*, to provide "minimum" training "before being assigned duties", including, *inter alia*, "training as to the contents / application of [Chapter 95 of the Pennsylvania Administrative Code regarding County Correctional Institutions] and in their general and specific duties." 37 Pa. Code §95.221(1).

57.   Under those regulations, the Lehigh County Jail was required, *inter alia*, to have, in accordance with "the minimum requirements applicable to security" a "[W]ritten local policy [which] must provide for [the] [e]stablishment of emergency plans for responding to emergency incidents" including the serious prisoner-on-prisoner assault upon the Plaintiff. 37 Pa. Code §95.241(3)(i).

58.   "The minimum requirements listed [above] are deemed to be essential to the safety and security of the County [Jail], [Jail] staff, inmates and the public." 37 Pa. Code §95.220(b).

59.   The Defendants further failed to have an appropriate policy which identified those prisoners who would represent a potential danger to other prisoners like the Plaintiff and/or which required their segregation from other inmates, like the Plaintiff, who could become their likely victims.

60.   If, in fact, such an appropriate and sufficient policy did exist at the time of the Plaintiff's incarceration, the Defendants routinely disregarded and/or failed to enforce it, and were thereby deliberately indifferent to the Constitutional rights of the Plaintiff to be free from assault while a prisoner in their care and custody.

61.   The County, the Warden, and the Director of Corrections also failed to train their correction officers on how to properly:

   1) Identify a prisoner who represents a danger to others;

   2) Segregate a dangerous prisoner from other members of the Jail population, who may become the subject of such a prisoner's dangerous propensities;

   3) Monitor and otherwise closely supervise the dangerous inmate;

   4) Treat a dangerous prisoner, especially referring such a prisoner for individualized mental health attention;

   5) Provide timely and appropriate emergency response to prisoner-on-prisoner assaults; and

   6) Failed to define expected performance of correction officers and supervisors by promulgating policies, rules, and best practices:

    a.  Requiring the immediate identification and classification, on admission, of inmates who represent a danger to themselves or others;

    b.  Requiring the segregation of prisoners who have a history of violent behavior and/or are mentally unstable; and

    c.  Providing constant supervision and immediate emergency responses to prisoner-on-prisoner assaults, especially those that are reasonably foreseeable.

62.    The County of Lehigh and its Warden, Kyle A. Russell, and its Director of Corrections, Janine Donate, who each act in capacities as both decision policymakers and supervisors to the subordinates who participated in the physical and administrative placement of prisoner CP into the Plaintiff's locked cell, providing her the foreseeable opportunity to harm the Plaintiff, also unconstitutionally maintained a policy or custom whereby:

    1)  The aforementioned written policies were not promulgated;

    2)  The aforementioned written policies and deficiencies contained therein, if in fact, promulgated, caused the incident of unconstitutional activity complained of here;

    3)  Necessary and appropriate training was not properly provided as to the performance requirements of these policies;

4) Necessary and appropriate discipline regarding written policies was not maintained;

5) A culture of condoning the unconstitutional prisoner-on-prisoner violence which occurred as a result of the above, was permitted to develop;

6) Necessary and appropriate performance testing and retraining did not regularly occur; and

7) No proper investigation of this or other historical prisoner-on-prisoner assaults occurred or, if they did, occurred with bias, demonstrating a pattern of tactically approving unconstitutional practices.

63.   The Defendants failed to adhere to prevailing correctional standards, administrative regulations, policies, and best correctional practices which would require, under the circumstances, that:

1) CP be treated as a mentally unstable and dangerous inmate without access to other inmates;

2) CP not be placed in general population where other inmates, like the Plaintiff, would be placed at unnecessary, unreasonable, and foreseeable risk of harm;

3) CP be properly administered professionally prescribed medications intended to reduce the likelihood of harm to herself and others, including fellow inmates, like the Plaintiff and correctional staff; and

4) CP be segregated in a singular cell designed to allow continuous monitoring while she receives appropriate mental health medications and treatment, and if for any reason either the County Jail or its healthcare providers are unable to meet those minimal requirements, that Defendants immediately consult with outside mental health care providers for further assistance, and/or that CP be transferred to another appropriate facility capable of providing such care, supervision and treatment.

64. Instead of having any of the foregoing, the Defendants, intentionally and with a reckless and deliberate disregard for the health, safety and welfare of the Plaintiff (and CP), intentionally and wantonly placed CP in a locked jail cell with the unsuspecting and defenseless Plaintiff, with full knowledge of the danger and jeopardy which that improper placement created for the Plaintiff, and knowing that the Plaintiff would not be able to escape any assault by CP occurring within the locked cell.

65.    Moreover, the Defendants intentionally increased the risk of harm to the Plaintiff by failing to treat her mental pathology, and by withholding CP's required medications, despite CP's repeated requests for same, and merely stood by while CP became increasingly anxious, agitated, and erratic until the point where she viciously attacked the Plaintiff, for no reason, while the Plaintiff was asleep in her bunk.

66.    This improper placement of CP into a locked cell with the Plaintiff created an opportunity for CP's assault upon the Plaintiff which would otherwise not have existed except for that intentional, obviously dangerous, affirmative decision CP's placement, and constituted the direct, proximate, and legal cause of Plaintiff's resulting serious injuries and losses.

67.    The Defendants' failure to administer necessary medications to CP or to otherwise meet her mental health needs, which were obvious to even a lay person, increased the risk of harm to the Plaintiff.

68.    The Defendants' failure to closely monitor and supervise the mentally disturbed CP and her deteriorating condition was a substantial factor in allowing her vicious, foreseeable assault upon the Plaintiff to occur prior to any reasonable intervention, as well as was the delayed response by correctional officers to CP's assault upon the sleeping Plaintiff, which

permitted the assault to continue uninterrupted for an extended period of time, inflicting even greater damage and injury to the Plaintiff.

69.     These deficiencies, which also reflect acts and omissions that violate national correctional standards, and best practices, and Administrative Regulations as stated above, were intentional and, so obvious as to reflect a deliberate indifference to the unconstitutional consequence which would likely follow the present circumstances whereby the Plaintiff was seriously harmed by CP, a dangerous and mentally unstable prisoner, and can be said to be the moving force behind that harm, without which the alleged Constitutional infractions would not have occurred.

70.     The Plaintiff advised LCJ officials that she wanted to assist in the bringing of criminal charges against CP for her assault and wrote this to the Warden, who denied her request.

71.     The Warden conducted no proper investigation of the vicious assault and even refused to identify the Plaintiff's assailant to Plaintiff so that she could not take legal action on her own to have criminal or other charges filed.

72.     The Warden took no action to have an Allentown Police Department officer initiate a criminal investigation of CP, or to refer the matter to other independent entities for investigation and prosecution.

73.   In fact, Plaintiff was never properly interviewed by any investigator or prison supervisor.  It is believed and therefore averred that the Defendants Warden and Director of Corrections engaged in this form of coverup of the assault so as to conceal the recklessness and negligence of LCJ personnel that resulted in the serious and life altering injuries to Plaintiff, and to avoid their own liability and/or criticism.

74.   This further represents evidence of the Warden's and Director of Correction's further and continuing deliberate indifference to the Plaintiff's Constitutional rights, by impeding her access to the Courts.

   **WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT II
### Direct Negligence and Vicarious Liability – State Claim
### *Against All Defendants*

75.   The Plaintiff incorporates by reference the preceding paragraphs as if once again set forth here.

76.   Under Pennsylvania law, a party may be found liable if their negligence and/or willful misconduct constitutes conduct that affords to a third person the opportunity to commit a tort or a crime on another, and if the party either knew, or had reason to know that such negligence or misconduct might give rise to a situation where such tort or crime will occur.

77.   Such liability is well-established and is recognized in, *inter alia*, §448 of the Second Restatement of Torts, which has been cited with approval by Pennsylvania courts.

78.   Here, the Defendants were clearly willfully and wantonly grossly negligent by wrongfully placing CP, a known mentally disturbed prisoner, with a prior history of violent propensities, which were known by, or should have been reasonably known by, the Defendants with the Plaintiff in a locked cell.  Thus, the Plaintiff was not only among a class of CP's likely victims but, clearly, was her most probable, if not inevitable individual target, after locking the Plaintiff in a cell alone with CP.

79.   CP's assault upon the Plaintiff was foreseeable, if not predictable, and was made virtually inevitable by the Defendants' failure to medicate CP as required, and by Defendants' failure to in any way to warn the Plaintiff of CP's dangerous propensities, so that the Plaintiff might possibly avoid CP's assault, or otherwise try to protect herself against it.

80.  The acts and/or omissions of the Defendants which resulted in the wrongful placement of CP in the Plaintiff's locked cell, and the harms she thereafter was able to inflict upon the Plaintiff, are actionable under prevailing law and §448 of the Second Restatement of Torts because:

1)  Said acts and/or omissions by the Defendants afforded prisoner CP the opportunity to commit a tort and/or crime upon the Plaintiff;

2)  The Defendants either knew or had reason to know that such gross negligence and/or willful misconduct might give rise to prisoner CP's subsequent assault upon the Plaintiff; and

3)  Such assault did, in fact, predictably occur, directly and proximately causing the harms to the Plaintiff as alleged herein.

81.  The County of Lehigh was deliberately and recklessly indifferent to the health, safety and welfare of the Plaintiff and her Constitutional rights by failing to both train and supervise its employees to follow appropriate Administrative Regulations, policies and protocols as well as redundant correctional safeguards, to avoid wrongfully placing a dangerous prisoner in the Plaintiff's locked cell, especially without prior warning to the Plaintiff as a foreseeable victim of CP's dangerous propensities so that she could attempt to maintain greater vigilance and attempt to protect herself.

82. In addition to the direct liability of the County of Lehigh for recklessness, gross negligence and deliberate indifference to the health, safety and welfare of the Plaintiff due to its own acts and/or omissions, committed through its Warden and Director of Corrections as supervisors and policymakers, the County of Lehigh is also vicariously liable for the acts and omissions of its presently unidentified employees who acting alone or, together, by their individual willful misconduct, intentionally effected or aided or abetted, CP's vicious wrongful assault upon the Plaintiff.

83. The intentional, wrongful placement of prisoner CP in Plaintiff's locked cell, which was participated in, and effected jointly and/or severally by, one or more agents or employees of the County of Lehigh and/or its Jail, constituted willful misconduct and was committed in a deliberate, intentional, wanton disregard for the serious harms which were ultimately inflicted upon the Plaintiff as stated hereinbefore, entitling the Plaintiff to receive punitive damages in addition to compensatory damages, costs and attorney's' fees as permitted by law, from all Defendants, except the County of Lehigh itself.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit

for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## OTHER

84. Plaintiff respectfully requests a jury to deliberate upon the within causes of action.

85. The within case is not subject to arbitration.

86. Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

87. Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring that the within described practices committed by the Defendants to be unlawful, and enjoining their present and continued employment and effects, and appointing a monitor to supervise and report to this Court the legal conformity of same.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a. Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

b.   Award punitive damages to Plaintiff against all Defendants (excepting the County of Lehigh), in their individual capacities, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

c.   Award reasonable attorney's fees and costs to the Plaintiff, as may be awardable pursuant to 42 U.S.C. Section 1988, the Civil Rights Attorney's Fees Award Act of 1976, or any other appropriate statutory provisions;

d.   Enter an Order enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of 42 U.S.C. §§ 1983, 1988, the 14th Amendment of the Constitution of the United States, and cognate sections of the Pennsylvania Constitution; and further affirmatively requiring the Defendants to engage in appropriate remedial efforts to adopt, and enforce, policies that are calculated and intended to preclude the conduct alleged to have been engaged in by the Defendants named herein and providing for the independent monitoring and reporting of same to this Court; and

e.   Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted:

Dated: August 7, 2023                    By:  _____
                                              Robert E. Goldman, Esquire
                                              PA Attorney I.D. # 25340
                                              535 Hamilton Street, Suite 302
                                              Allentown, PA 18101
                                              (610) 841-3876
                                              reg@bobgoldmanlaw.com
                                              Attorney for Plaintiff Kristin Pantzar